**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Criminal Action No. 24-cr-00349-CNS

UNITED STATES OF AMERICA,

     Plaintiff,

v.

DAVIN DANIEL MEYER,

     Defendant.

---

## MOTION TO REOPEN DETENTION HEARING AND TO RELEASE
## MR. MEYER ON CONDITIONS

---

Comes now David S. Kaplan, counsel for Mr. Meyer, and requests the Court reopen the detention hearing, as permitted by Magistrate Neureiter at the initial detention hearing, and to introduce additional material information that was not known or has since been established, bearing on the issue of whether there are conditions of release that will reasonably assure the appearance of Mr. Meyer, the safety of any other person and the community.

### I.      Procedural Background

On July 14, 2023, a Criminal Complaint was filed alleging that Davin Daniel Meyer violated 18 U.S.C. Section 2339(B) by attempting to provide material support or resources to a designated foreign terrorist organization (ECF #1). An arrest warrant issued, and Mr. Meyer was incarcerated that same day (ECF #5). The government indicated their intention to seek detention based on 18 U.S.C. Section 3142(f)(1)(A). A detention hearing was held before Magistrate Judge Neureiter on July 20, 2023. Following the hearing an order of detention was entered (ECF #8).

On July 26, 2023, an Indictment was filed charging the same violation as contained in the complaint, along with a forfeiture allegation (ECF #10).

These proceedings have been extended in part due to the complexity of the case and in part due to the nature of a terrorist prosecution and the accompanying security requirements. The *Government's Motion to Appoint a Classified Information Security Officer,* citing to the Classified Information Procedure Act (CIPA), 18 U.S.C. App. III (1980), was filed August 18, 2023 (ECF. #19). A hearing was conducted, in part, on the request for the appointment of a Classified Information Security Officer (CISO) which was granted on November 27, 2023 (ECF# 29). An order of appointment was entered on December 1, 2023 (ECF #30). Due to proceedings detailed in CIPA, classified ex parte filings and proceedings have been periodically scheduled.

A Joint Moton for Ends of Justice Continuance was filed on March 7, 2025 (ECF #75). The court issued an order granting the motion and setting further proceedings including a trial scheduled to commence on November 3, 2025 (ECF #76).

Mr. Meyer has been detained ever since his arrest, first in the Washington County Jail and then at the Federal Detention Facility in Englewood. Mr. Meyer has now been in custody for approximately 1 year and 11 months.


## II.    December 2023 Detention Hearing

A contested hearing was conducted regarding Mr. Meyer's detention status on July 20, 2023. The government, through AUSA Melissa Hindman, requested detention alleging Mr. Meyer was a flight risk and a danger to the community (Transcript of Detention Hearing at 8 Att:

#1 hereinafter Trscpt). Ms. Hindman recounted Mr. Meyer's involvement with Confidential Human Sources (CHS), his obsession with Islamic internet content and a 17-year old's expression of interest in traveling to Iraq to fight as a member of Isis. The government's theory of culpability for attempting to aid a designated terrorist organization, as explicitly expressed at the detention hearing, is "...the material and resources he was providing was himself in the form of personnel" (Trscpt: at 19, 20). No additional material resources have ever been alleged. Despite the defendant's mother, Ms. Meyer, testifying at the detention hearing and expressing her lack of fear of her son, never having been harmed by Mr. Meyer, and her ability to ensure his compliance with any terms and conditions of release, the court remained troubled about placing Mr. Meyer in her custody (Trscpt: at 40 – 64).

The court concluded that Mr. Meyer was not a flight risk but was concerned about the safety of the community and to Ms. Meyer if placed in her custody. In issuing its order the court commented "If over time an alternative, say a halfway house or therapy situation, were to exist where the defendant could be on an ankle monitor, receive some kind of treatment, but not in the custody of his mother, I'd be more comfortable considering a release. But as of today, I think the government has met their burden, and so I will issue an order of detention, with great regret. Because I understand the situation that everybody faces, but this is one where I'm not prepared, despite her genuine testimony, I'm not prepared to put Ms. Meyer at risk" (Trscpt: at 80). The court echoed this sentiment in the written order that in part states:

> Because the only proposed condition of release is to release the defendant into the custody of his mother (who he has previously threatened), I conclude by clear and convincing evident that no condition or combination of conditions of release will reasonably assure the safety of the

community. That said, if some residential treatment facility is available that is prepared to accept and house the defendant, with (sic) I would be willing to reconsider this order of detention (ECF #8).

### III.    Legal Standard to Reopen Detention

"In our society, liberty is the norm and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno,* 481 U.S. 739 (1987). The Bail Reform Act sets out the framework for evaluating whether a defendant maintains his liberty or falls into that carefully limited exception. 18 U.S.C. § 3142. A defendant may be detained pending trial only if a "judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." § 3142 (e)(1). A judicial officer is required to consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person including the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history and record concerning appearance at court proceedings; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. § 3142 (f)(g).

In this case, the charges against Mr. Meyer establish a rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." § 3142(e)(3)(C). This presumption places the burden of production on Mr. Meyer. However, the "burden of production is not heavy . . . some

evidence must be produced." *United States v. Stricklin,* 932 F.2d 1353, 1355 (10th Cir. 1991). The burden of persuasion regarding risk-of-flight and danger to the community always remains with the government." *Id.* At 1354-55. The court as documented above has determined Mr. Meyer is not a flight risk. Nothing since his detention provides reason to alter that conclusion The Bail Reform Act allows a detention hearing to be reopened at any time before trial if the judicial officer finds that "information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue of whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. 3142(f).

The court in ordering detention expressed concerns regarding the order of detention and specifically expressed the circumstances that could allow Mr. Meyer's release. The suggestion of acceptance into a residential treatment facility presented by the court as a reason to revisit detention has been recognized as a changed circumstance sufficient to re-open a detention hearing. *See e.g., United States v. Wood,* 2023 WL 8101865 (E.D. Wash. 2023).

"The detention hearing may also be reopened for a more fundamental reason, that being to examine the due process implications of continued detention of defendants." *United States v. Shareef*, 907 F. Supp. 1481, 1484 (D. Kan. 1995). "Prolonged pretrial detention may become excessive and consequently punitive so as to violate the person's right to due process affordable by the Fifth Amendment to the Constitution." *United States v. Theron,* 782 F.2d 1510 (10th Cir. 1986); *United States v. Zannino,* 798 F.2d 544 (1st Cir. 1986); *United States v. Orena,* 986 F.2d 628 (2d Cir. 1993). "Due process violations have been found and defendants ordered released due to their prolonged detention." *Shareef,* 907 F. Supp. at 1484. The length of the detention, the

extent of the prosecution's responsibility for the delay of trial and the strength of the evidence upon which the detention was based are the factors to consider regarding the due process implications of a prolonged pretrial detention. *Id.* ("The court cannot find that the Tenth Circuit has addressed this issue, therefore, the court will apply the considerations enumerated by the Second Circuit."). In cases where defendants were detained for "almost nine months" and four months "absent trial within the succeeding 30 days," both required release. *Id.* Mr. Meyer has been detained for a lengthy period of time implicating these due process concerns.

## IV.     History of Struggles and Corresponding Treatment

Mr. Meyer has been diagnosed with several disabilities as will be briefly recounted in the following pages. To understand his behavior, statements and now, the propriety of his release pending trial, it is important to understand his condition and history of treatment.

Davin Meyer was born on November 3, 2004. His early years were marked by some behavioral anomalies. At 24 months old Davin was evaluated by *Child Find* due to a perceived delay in speech development. In his early years he would appear ██████████████████ ████████████████████. While some of these acts continued nothing seemed serious enough for intervention.

In 2013, during his third-grade year at Sedalia Elementary School, he began having increased behavioral issues. Friends had suggested to his mother, Ms. Deanna Meyer, that he be tested for more serious developmental or behavioral issues but not wanting to confront a potential disability Ms. Meyer did not take action. ████████████████████

████████████████████████████████████████████

████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████. It was recommended that he be provided educational support incorporating

an Individualized Education Program (IEP). ████████████████████████████████

████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████. With the difficulties Davin was

experiencing it was decided to home school him for the 2014-2015 school year ████████████ in

████████████████████████████████. He appeared to be

doing much better.

In August of 2015 Davin returned to school enrolling in Meadow View Elementary

School in Castle Rock. An IEP was implemented, and he was put in a "center-based program"

for children with disabilities. He did well under the guidance of an exceptional teacher. After she

left, during the 2016 school year, life once again became difficult. ████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████. A Behavior

Treatment Plan (BPI) was instituted that recognized Davin's positive attributes and where

progress was needed but failed to adequately address the severe difficulties he was experiencing,

nor did they have the resources to address his problems. The Shiloh staff were woefully ill-

equipped to provide support for students suffering disabilities, many of whom did not even

possess teaching certificates. The family did not believe this was an appropriately staffed

program for young students with educational needs and felt that these two years did not help with

treatment nor did it provide a valuable educational experience. ███████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████ These generalized reviews continued with subsequent IEP entries. Although, his

review in December of 2018 found him to have shown a "great amount of personal growth," he

was withdrawn in May of 2019.

██████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████

The absence of appropriate treatment exacerbated Davin's frustrations, and he tried to navigate academics without the therapy suggested by those knowledgeable about what was needed for young people suffering from these conditions. ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████ Recognizing that his acting out could result in a call for support and removal from the home, Davin for a period was better able to regulate his behavior. At the time, this incident suggested to Ms. Meyer that a call to law enforcement authorities may provide a benefit in addressing some of his behavior.

Dissatisfied with his progress at Shiloh, Ms. Meyer chose the only alternative offered by the school district, in the Fall of 2019 Davin was placed in an alternative school called *Plum Creek Academy*. ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████





With many of these interventions not implemented due to the lack of district resources or financial ability, Davin was merely maintaining his academic performance while at Plum Creek. Then COVID hit at the beginning of 2020 impacting many, and particularly difficult for Mr. Meyer.

Once limited to in-home education Davin became more and more isolated. An incident where Deanna Meyer attempted to have him concentrate more on school then electronics escalated, and he became agitated and pushed his mother during the episode. ████████████ ████████████████████████████████████████████████. Under the circumstances, the limitation of available services and the lack of any injury, he was allowed to

remain at home. Once again the presence of law enforcement resulted in Davin's behavior moderating for a while.

His Diversion Discharge Report dated January 21, 2021, documented the efforts made by the Meyer family to implement recommendations for treatment and the difficulty in obtaining adequate resources (Att: # 4). ███████████████

███████████████████████████████

███ Ms. Meyer worked with the Juvenile Diversion program to secure in-home family services, but the family's need was more than Diversion could provide. A momentary hope for relief occurred when *Developmental Pathways* accepted Davin into their program, which would have made him eligible to receive services indefinitely, but that did not survive. Having adequately completed Diversion expectations he was successfully terminated from their program.

During 2020, the height of COVID isolation, all the services that were in place disappeared. In home therapy evaporated and the only thing that remained were computer virtual meetings ████████████████

████████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████ ██ ██████████████

███████████████████████████ .

The program was aware of his diagnosis and tasked with improving these disabilities. It was noted that he still suffered intense anxiety when things did not go as planned. Of particular importance was their observation that he "was never a behavioral problem" (Att: #5 Aspiro Discharge). ██████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████

       ██████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

       Upon returning home Davin was encouraged to participate in *Fusion Academy* where he completed only three classes and shortly thereafter stopped attending school. ██████████████

████████████████████████████████████████████████████

encourage his involvement in school or a job or to obtain a driver license, including resorting to being critical of his lifestyle to change behavior—to no avail. It was during the intensity of these exchanges that Davin would make threats towards Ms. Meyer. After speaking with Ms. Meyer's educational consultant, it was decided to try another wilderness or residential treatment program. Due to his age and expense no program was available, so they attempted to have him attend Devereux Advanced Behavioral Health. Devereux required a state referral. Confronted with the desperation of a mother worried about the mental health of her son, and wanting to explore remaining options while he was still a juvenile, she called the police hoping to either obtain a referral for Devereux or ask if they had any mental health service options for Davin.  This was a decision Ms. Meyer would live to regret.

## V.  Law Enforcement Involvement

From the beginning of their involvement, law enforcement was aware of Mr. Meyer's extensive mental health problems and disabilities – including his attendance in an 8-month residential treatment program for mental health and behavior treatment (Criminal Complaint: ECF #1 p.5). After so many years, Ms. Meyer was adept at explaining the circumstance of her son, the disabilities that had long been established and a description of the services she was seeking. This she did when contacting the Douglas County Sheriff's Office (DCSO) for help in June of 2022. Mr. Meyers was 17 years old, not to turn 18 for another 5 months. The sheriff's office indicated that they did not have services of the type Ms. Meyer was seeking but suggested she contact the Douglas County Community Response Team (CRT). Having tried so many

alternative treatments she chose not to call but an officer, and member of the CRT, showed up at the house. Ms. Meyer agreed to use the services of Ms. Hope Sarver, a team case worker.

An initial meeting was held on August 4, 2022. A follow-up meeting on Webex was conducted on August 9, 2022, with sixteen participants. Among the participants were Kimberly Priebe a Developmental Pathways liaison, whose website explains "we are here to provide support and services, coordinate care and expand our offerings by partnering with community organizations." Meredith Velasquez was associated with the Juvenile Assessment Center/Community Assessment Program (JAC-CAP) which they say, "strives to keep youth at home and out of juvenile justice and human services systems by connecting families with supportive services to promote safe healthy and happy kids." Shauna Shipp, and Krisent Chessnoe, of the Community Response Team (CRT) participated along with CRT Coordinator Maggie Cooper and Kristina Brown (CRT Training). Sarah Davenport, Collaborative Management Program Manager (CMP) attended with a statement that describes their mission as being, "to promote and encourage local collaboration for the purpose of improved services and better outcomes for the children youth and families that we serve." Clinton McKinzie, a deputy district attorney from the 18th Judicial District, (now the 23rd Judicial District) attended. Also included were Deputy Corey Chance, Captain Paul Rogers, Lt. Alan Stanton, off. Luke Lorenz, Sgt Chrstine Bright and Lt. Robert Rotherham of the Douglas County Sheriff's Office. Ms. Meyer was optimistic that with these resources, a collaboration of the many Douglas County Offices designed to help families and their children could aid Davin with overcoming his struggles.

Ms. Sarver was said to be helping get Davin into the Colorado Department of Health *Children's Habilitation Residential Program* (CHRP). This program would have remained available to Davin after turning 18, when considered an adult, and providing for his continuing involvement in the Developmental Disability Program. There was also a suggestion that a court order could be obtained limiting his computer access, requiring mental health treatment, and providing medication as needed. It appeared that Ms. Sarver was helpful attending his meetings with Developmental Pathways, showing interest in the Douglas County School District interactions and available to discuss issues of Davin's condition. However, the collaboration did not result in receiving any mental health services. Rather, and unbeknownst to Ms. Meyer, this information was making its way to the FBI. Ms. Meyer did speak with representatives of the FBI on two separate occasions through a Zoom connection. ███████████████████████ ████████████████████████████████████████████████ ███████ Nothing could have been further from the truth.

None of the service professionals, nor law enforcement, acted in Davin or the community's behalf. ██████████████████████████, for 5 months no action was taken. Instead, members of the FBI and DCSO continued to communicate with Ms. Meyer collecting information rather than helping with treatment or encouraging him to change behavior. Ms. Meyer continued to interact with them believing it would be helpful to her and Davin, until it became unfortunately obvious that they were milking her for information to support manipulation and prosecution. Then in November of 2022, having turned 18 and no longer eligible for many services, but certainly subject to adult criminal prosecution, agents of the FBI began monitoring his online communication with ████████████████████

16

███████████████████████ FBI Confidential Human Source (CHS-1). For an additional 9 months (November 2022 to July 2023) agents, knowing of Mr. Meyer's severe mental health diagnosis, befriended and encouraged his online communications including arranging to have him meet with a Confidential Human Source (CHS-2). Inevitably resulting in what he would otherwise be incapable of accomplishing—an appointment with a flight going nowhere and an indictment for attempting a terrorist act.

## V.     Treatment Plan for Release

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████ The court expressed concern about aggressive behavior by Mr. Meyer directed at his mother. It is noteworthy that Mr. Meyer's past actions have never resulted in physical injury to anyone. Those times when police were called did not result in any criminal or delinquent charges and the one incident of harassing behavior was dealt with by the successful completion of juvenile diversion. Ms. Meyer sincerely testified to the court that she was not in fear of Mr. Meyer should he be returned to the family home.

Mr. Meyer's focus on Islam continued during the initial period of his confinement. It is no longer an interest he maintains and to the extent he ever was, he has been "deradicalized." Of equal, if not greater significance, there has been a realization by Mr. Meyer that ████████████ ████████████████████████████████████████████

████████████████████████████. This has led him to express an interest, and his mother to pursue treatment once again.

On May 28th, 2025, Janet Hardin, Director of Admissions for Raleigh House conducted a phone interview with Mr. Meyer concluding he is a suitable candidate for treatment and was accepted into their program. ████████████████████████

████████████████████████████████

████████████████████████████. Their treatment is rooted in evidence-based therapeutic Cognitive Behavioral Therapy. The residential facility is located at 325 S. Almstead Rd in Watkins Colorado.

As indicated on the acceptance letter, residential treatment programs are for a minimum of 30 days with the ability to extend the stay up to 6 months (Att: # 6). Raleigh House is familiar with treating individuals involved in the criminal justice system. Mr. Dan Mallon, Clinical Admissions Director, has indicated the ability to accommodate GPS monitoring, would provide weekly updates to a pre-trial supervision officer, immediately notify pre-trial should Mr. Meyer absent himself from the facility and enforce other conditions of release such as limiting internet access. Furthermore, Mr. Mallon indicated that if Mr. Meyer conducted himself in a way that they believed treatment services were no longer productive, pretrial services would be contacted, and Mr. Meyer would be separated from the facility.

Following residential treatment there are after-care programs available at Raleigh House. Depending on the need, Mr. Meyer can participate in a non-residential capacity by attending programs from 9:00 to 4:00 five days a week, half day programs meeting either in the morning or afternoon are available or programs occurring 3 nights a week. Raleigh House has another

location, more accessible to his mother's location in Sedalia. The Center for Integrative Behavioral Health is located at the DTC, servicing non-residential clients.

The court expressed its concern about placing Mr. Meyer with his mother. Raleigh House can provide residential treatment for an extended stay. The court can release and determine proper conditions, perhaps reconsidering placement after the completion of residential treatment now that 2 years have elapsed since Mr. Meyer's arrest. Ms. Meyer's residence, along with his grandmother's which are on the same property, have upgraded their cell phone service and GPS supervision now accessible at their home. Once again, Ms. Meyer does not feel her safety is compromised and is willing to supervise with respect and enforcement of any conditions of pretrial release. (Att: #7 Deanna Meyer Letter)

## VI.    Conclusion

Mr. Meyer has been in custody pending trial for close to 2 years. While a case like this often results in a finding of complexity and the subject of reasonable requests for Ends of Justice continuances, much of the delay was as a result of the manner in which it was charges and the requirements of a CIPA prosecution. ███████████████████████████████ ███████████████████████████. He has come to a greater understanding of his own mental and emotional difficulties and has maintained a constant and loving relationship with his mother who continues to support and seek out treatment to help with his disabilities.

During his incarceration, and despite charges that can impose difficulties with other inmates, Mr. Meyer has an incident free record at the two facilities he has been housed. He has now been accepted for treatment at a location that is well equipped to address his needs and

gives him the treatment that was hoped for when Ms. Meyer first contacted the Douglas County Sheriff's Office. The government should now be willing to allow Mr. Meyer to be in treatment while still pursuing their case. Considerations for release, when conditions can be in place to assure the court and the U.S. Attorney's office that the safety of the community will be assured, also serves to give life to the presumption of innocence.

There is a combination of conditions that can reasonably ensure Mr. Meyer will appear and that the community will remain safe.

The government opposes the request to reconsider detention. Counsel, on behalf of Mr. Meyer, with due consideration to the government's right to respond, requests a setting as quickly as practicable.

Dated: July 4, 2025.

*s/ David S. Kaplan*
David S. Kaplan #12344
STIMSON LABRANCHE HUBBARD, LLC
1652 Downing Street
Denver, CO 80218
Phone:   720.689.8909
Email:   Kaplan@slhlegal.com

*Attorney for Davin Meyer*

**Certificate of Service**

I certify that on July 4, 2025, I electronically filed the foregoing *Motion to Reopen Detention Hearing and Release Mr. Meyer with Conditions* with the Clerk of Court using the CM/ECF system.

*s/ Hannah Martin*
Hannah Martin